## Rishkofski v. Central Columbia Area School District

*Peter J. O'Brien*, for plaintiffs.

*Howard R. Berninger*, for defendant.

MYERS, P. J., December 19, 1973.—This is an action in assumpsit which was initially commenced by a praecipe for summons filed by the plaintiffs'

attorney on behalf of several school teachers professionally employed by the defendant school district.

Subsequent to the filing of the summons, the claims of certain of the plaintiff school teachers were settled. Thereafter, a complaint in assumpsit was filed on behalf of the remaining four teachers whose claims had not been settled at that time.

Defendant's answer then admitted liability as to one of the plaintiffs, to-wit, Clyde Gass, but disputed the claims of the remaining plaintiffs, to-wit, Joseph Rishkofski, James Hartman and Richard Michael.

Thus, the claims of the said Joseph Rishkofski, James Hartman and Richard Michael are now before the court for disposition, following hearing without a jury as agreed upon by the parties.

The three plaintiffs claim that they are owed the difference between what they were paid during certain school years in question and what the plaintiffs allege are the mandated salaries under the two applicable acts of assembly, to wit, Act 405 of December 9, 1965, P.L. 1057; and Act 96 of June 12, 1968, P.L. 192; see 24 PS §11-1142.

The court has struggled with this case. We have attempted to apply the sometimes unclear evidence offered on the record to the confusing and complex statutory formulas set forth in the acts of assembly. It appears to us that the framers of these statutory formulas may be commended for their intellect, but certainly not for their clarity.

We also feel that certain of the plaintiffs' testimony lacked a satisfactory understandable explanation of the thrust of their contentions.

In spite of these problems, we have attempted to arrive at a just result. In so doing, we acknowledge that the decision in this case has been too long forthcoming.

Since the contentions of plaintiffs Rishkofski and Michael are essentially similar and based upon common legal principles, we shall first take up the claim of plaintiff James Hartman.

The facts indicate that Mr. Hartman executed a written employment contract with the defendant school district on July 3, 1967, to act as a professional employe beginning with the school year 1967-68. The written contract stated that Mr. Hartman was hired for "an annual compensation of $5,100.00."

At that time the minimum salary mandated by the Commonwealth of Pennsylvania for a beginning teacher holding a college certificate was $4,500 annually, plus a yearly increment of $300. The defendant school district contends that Mr. Hartman was actually hired at a salary of $4,800, plus $300 for extra credits; that such was the oral understanding between the parties at the time the contract was executed; and that Mr. Hartman has been paid according to that understanding.

On the other hand, Mr. Hartman alleges that he was hired at a salary of $5,100 annually, as set forth in the written contract, and that he is owed an additional $300 per year for extra credits for the four school years ending with the school year 1971-72.

One of the principal questions in all three cases revolves around the proper application of section 1142(a) of Act 405, which directed school districts to pay the teachers the minimum salary and increments for the school year 1965-66 and each school year thereafter as provided in the statutory formulas, and in accordance with the column in which the professional employe is grouped and the step which the professional employe has obtained by agreement, or by years of experience within the school district, whichever is higher, each succeeding step constituting one year of service.

Thus, the crucial language to be interpreted is the "step which the professional employee has obtained by agreement." See Deeter et al. v. Berlin Brothers Valley School District, No. 1093 of 1969 in Somerset Co., Pa.

In Baldacchino v. Central Cambria School District, 29 Cambria 1 (1970), the court passed upon this question, and we conclude that its holding is applicable to the instant case. In Baldacchino, supra, the court held that "the step attained by agreement" at the time of the initial agreement means the "point" in the schedule agreed upon by the teacher and the school district at the time of initial employment. The court further held that the "point" or "step" in the schedule at the time of initial employment is determined by the amount that the agreed annual salary at the time of initial employment exceeds the mandated minimum salary at the time of initial employment, in accordance with the yearly increment then in effect. Baldacchino was affirmed per curiam by the Superior Court, 218 Pa. Superior Ct. 752.

The court, in Baldacchino, supra, went on to state that Act 405 mandates that all teachers, such as the plaintiffs herein, who have attained the steps by agreement at the time of initial employment, for any given subsequent year signed while still in the employment of the same school district, shall be paid no less than the amount shown on that step of the appropriate salary schedule for the year involved, which step is the sum of the steps obtained by agreement at the time of initial employment in accordance with the schedule then in effect, plus one step for each and every year of service thereafter.

The mandate for the addition of one step for each year of service in addition to the initial step attained by agreement comes from section 1142(e) of Act 405 and section 1142(f) of Act 96. Thus, if a teacher has

initially attained a step by agreement, his step by agreement for any subsequent year while employed by the same school district is obtained by adding one step for each year of service to the initial step attained by agreement. See also Welsh v. Wilkes-Barre Board of Education, 46 D. & C. 2nd 61.

Whatever the reason for fixing the teacher's salary, it becomes a part of the contract of employment and thus part of the determination of the step attained by agreement. See Welsh v. Wilkes-Barre Board of Education, supra.

It thus becomes necessary for the court to interpret the contract between Mr. Hartman and the defendant school district.

It is a fundamental rule that when parties have reduced their understandings to writing, as the case herein, the law declares the written contract to be not only the best, but the only evidence of their agreement. All preliminary negotiations, conversations and oral understandings are merged into and superseded by the subsequent written contract. This legal principle is a part and parcel of what is commonly referred to as the "parol evidence rule." See Adams v. Frederickson, 384 Pa. 32.

There are, of course, several exceptions to the parol evidence rule, which we need not explore in this opinion. However, one exception may be noted in passing. That exception permits contractual provisions which are patently ambiguous to be clarified by the admission of parol or oral evidence. However, we see no such ambiguity in the Hartman employment contract, and therefore that exception to the parol evidence rule is not applicable here. On the contrary, it appears to this court that the language in the Hartman contract referring to his compensation is clearcut and unambiguous.

Applying the above principles, we conclude that Mr. Hartman was hired at a salary of $5,100 annually as stated in the contract, and therefore was hired at step three of the State mandated salary schedule. Since he was admittedly entitled to an additional $300 per year for extra credits, we conclude that he was underpaid $300 per year for four years, beginning with the school year 1968-69, or a total of $1,200.

We now turn to the claims of Mr. Rishkofski and Mr. Michael, which were based upon similar underlying legal questions.

Part of the controversy relating to the Rishkofski and Michael cases arises from the fact that Act 109, approved June 28, 1963, P. L. 182, contained a section which extended all 1962-63 contracts until the first Monday of August, 1963, rather than allowing such contracts to be automatically renewed on the first Monday of July, 1963. By virtue of that section, the aforesaid 1963 Salary Act of August 1, 1963, P. L. 466, 24 PS §11-1142 (which raised in annual minimum salary from $3,600 to $4,200) did not become effective until August 1, 1963.

Messrs. Rishkofski and Michael contend that they were each hired by the defendant school district as professional employes in June, 1963 at an annual salary of $4,500, when the minimum state mandated annual salary was $3,600, plus a yearly increment of $200. These two teachers claim that such placed them in step 5½ on the state mandated minimum salary schedule. They argue that step 5½ reflects the $900 amount by which their employment agreements exceeded the minimum mandated salary schedule at the date of the contract, i.e., June, 1963.

It should be noted that their claims begin with the school year of 1965-66, during which year they allege

they should have been placed at step 7½, considering a subsequent annual progression of one step per year.

On the other hand, defendant school district argues that at the time these two teachers were hired, it was known and considered that the minimum mandated salary was about to become $4,200 annually, and, therefore, their starting salary of $4,500 exceeded the mandated minimum by only $300, rather than $900 annually as claimed by the teachers.

If the school district's position were sustained, Rishkofski and Michael would be placed in a step proportionally lower than 7½ for school year 1965-66, and of course their step ratings and minimum salaries for subsequent years would be similarly reduced.

The school district insists that all parties, including the teachers in question, at the time of contractual negotiations, were aware of the act about to become effective on August 1, 1963, and that its salary provisions formed the basis for their salary negotiations. The school teachers deny this.

In Baldacchino, supra, the court held that teachers employed during July, 1963, such as plaintiffs Rishkofski and Michael, were employed in accordance with the schedule actually then in effect in June, 1963, which called for a $3,600 annual minimum plus a $200 yearly increment.

Based upon our research, we must conclude that the rationale of the Baldacchino case, supra, pointedly applies to the claims of Rishkofski and Michael.

Therefore, we find the teachers' contentions to be substantially correct with the few modifications hereinafter set forth. Keeping in mind that Rishkofski and Michael are admittedly entitled to certain additional compensation for accomplishments, such as the attainment of master's degrees and for extracurricular activities, etc., we conclude the following:

## I. CLAIM OF JOSEPH RISHKOFSKI

A. For the school year 1965-66 the plaintiff should be in step 7½ and should have received an annual salary of $5,960. Plaintiff actually received $5,360 and is therefore owed $600 for said school year.

B. For the school year 1966-67 plaintiff should be in step 8½ and should have received an annual salary of $6,850. Plaintiff actually received $5,900 and is therefore owed $950 for said school year. (It should be noted that defendant, in its brief, agreed with the above two amounts, if the court held the Baldacchino case to apply.)

C. For the school year 1967-68 plaintiff should be in step 9½ and should have received an annual salary of $7,000. Plaintiff actually received $6,700 and is therefore owed $300 for said school year. (Plaintiff claims he should have received an annual salary of $7,600, but the court reads the State maximum mandated salary to be $6,900 plus $100 for credits. The court concludes that plaintiff is incorrect on the formula in claiming a minimum mandated salary of $7,500.)

D. For the school year 1968-69 plaintiff should be in step 10½ and should have received an annual salary of $8,200. Plaintiff actually received $7,400 and is therefore owed $800 for said school year. (The court computes the maximum mandated salary as per the formula as $8,100, plus $100 for credits.)

E. For the school year 1969-70 plaintiff should be in step 11½ and should have received an annual salary of $9,750. Plaintiff actually received $8,900 and is therefore owed $850 for said school year. (The court computes the minimum mandated salary at $9,150, plus $300 for attainment of a master's degree, plus $300 upon the school district policy of exceeding the minimum mandated salary by $300 annually.)

F. For the school year 1970-71 plaintiff should be in step 12½ and should have received an annual salary of $10,250. Plaintiff actually received $9,400. Plaintiff therefore is owed $850 for said school year. (The court computes the minimum mandated salary at $9,450, plus $300 for attainment of a master's degree, plus $300 upon the school district policy of exceeding the minimum mandated salary by $300 annually, plus $200 for teaching in special education.)

G. For the school year 1971-72 plaintiff should be in step 13½ and should have received an annual salary of $10,800. Plaintiff actually received $9,900. Plaintiff therefore is owed $900 for said school year. (The court computes the minimum mandated salary at $9,750, plus $300 for attainment of a master's degree, plus $300 upon the school district policy of exceeding the minimum mandated salary by $300 annually, plus $200 for teaching in special education, plus $250 for extra credits beyond the master's degree.)

THEREFORE, the court concludes the total amount owing plaintiff Rishkofski for the school years in question is $5,250, plus interest.

## II. CLAIM OF RICHARD MICHAEL

A. For school year 1965-66 plaintiff should be in step 7½ and should have received an annual salary of $5,950. Plaintiff actually received $5,350 and is therefore owed $600 for said school year.

B. For school year 1966-67 plaintiff should be in step 8½ and should have received an annual salary of $6,900. Plaintiff actually received $5,950 and is therefore owed $950 for said school year. (It should be noted that defendant, in its brief, agreed with the above claimed amount, if the court held the Baldacchino case to apply.)

C. For the school year 1967-68 plaintiff should be in step 9½ and should have received an annual salary

of $7,050. Plaintiff actually received $6,750 and is therefore owed $300 for said school year. (Plaintiff claims he should have received an annual salary of $7,650, but the court reads the State maximum mandated salary to be $6,900, plus $100 for credits. The court concludes that plaintiff is incorrect on the formula in claiming a minimum mandated salary of $7,500.)

D. For the school year 1968-69 plaintiff should be in step 10½ and should have received an annual salary of $8,400. Plaintiff actually received $7,750 and is therefore owed $650 for said school year. (The court computes the maximum mandated salary as per the formula as $8,100, plus $300 for attainment of a master's degree. The court concludes that the plaintiff is incorrect on the formula in claiming a minimum salary of $8,250.)

E. For the school year 1969-70 plaintiff should be in step 11½ and should have received an annual salary of $9,750. Plaintiff actually received $8,950 and is therefore owed $800 for said school year. (The court computes the minimum mandated salary at $9,150, plus $300 for attainment of a master's degree plus $300 upon the school district policy of exceeding the minimum mandated salary by $300 annually.)

F. For the school year 1970-71 plaintiff should be in step 12½ and should have received an annual salary of $10,050. Plaintiff actually received $9,250 and is therefore owed $800 for said school year. (The court computes the minimum mandated salary at $9,450, plus $300 for attainment of a master's degree plus $300 upon the school district policy of exceeding the minimum mandated salary by $300 annually.)

G. For the school year 1971-72 plaintiff should be in step 13½ and should have received an annual salary of $10,600. Plaintiff actually received $9,800 and is

therefore owed $800 for said school year. (The court computes the minimum mandated salary at $9,750 plus $300 for attainment of a master's degree plus $300 upon the school district policy of exceeding the minimum mandated salary by $300 annually, plus $250 for attainment of credits beyond the master's degree.)

THEREFORE, the total amount owing plaintiff Michael for the school years in question is $4,900, plus interest.

We, therefore, enter the following:

## DECREE

AND NOW, to wit, this 19th day of December, 1973, after hearing held, judgment is entered against the Central Columbia Area School District, defendant, in favor of the individual plaintiffs, for the following:

A. For James Hartman in the sum of $1,200, plus interest.computed as follows:

$300 with interest from August 1, 1969
$300 with interest from August 1, 1970
$300 with interest from August 1, 1971
$300 with interest from August 1, 1972

B. For Joseph Rishkofski in the sum of $5,250, with interest computed as follows:

$600 with interest from August 1, 1966
$950 with interest from August 1, 1967
$300 with interest from August 1, 1968
$800 with interest from August 1, 1969
$850 with interest from August 1, 1970
$850 with interest from August 1, 1971
$900 with interest from August 1, 1972

C. For Richard Michael in the sum of $4,900, with interest computed as follows:

$600 with interest from August 1, 1966

$950 with interest from August 1, 1967
$300 with interest from August 1, 1968
$650 with interest from August 1, 1969
$800 with interest from August 1, 1970
$800 with interest from August 1, 1971
$800 with interest from August 1, 1972